# IN THE UNITED STATES CIRCUIT COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————————

COURT OF APPEALS CASE NO.: 14-14083-CC
D.C. Docket No. 1:13-cv-21835-KMM

———————————————

**BLANCO-HIDALGO HOLDING, LLC,**

**Defendant/Appellant,**

**vs.**

**ATLANTIC CASUALTY INSURANCE COMPANY,**

**Plaintiff/Appellee.**

——————————————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

——————————————————————————

**INITIAL BRIEF OF APPELLANT BLANCO-HIDALGO HOLDING, LLC**

——————————————————————————

PAUL B. FELTMAN, ESQ.
Florida Bar No.: 992046
**Alvarez, Carbonell, Feltman,
& Da Silva, PL**
75 Valencia Avenue, 8th Floor
Coral Gables, FL 33134
Phone (305) 444-5885
Facsimile (305) 444-8986
Counsel for Defendant/Appellant

BLANCO-HIDALGO HOLDING, LLC,

v.

ATLANTIC CASUALTY
INSURANCE COMPANY,

CASE NO.: 14-14083

---

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

**COMES NOW,** the Appellant, Blanco-Hidalgo Holding, LLC, by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 26.1 (b) and 11th Cir. R. 26.1-2 (f), hereby files this Certificate of Interested Persons and Corporate Disclosure Statement, and, in furtherance thereof, sets forth the following interested persons:

1. Alvarez, Benjamin Raul (Attorney for the Appellant)

2. Alvarez, Carbonell, Feltman & Da Silva, P.L. (Attorneys for the Appellant)

3. Alvarez, Concepcion (Defendant/ co-personal representative of the Estate of Jorge Romero)

4. American Claims Service, Inc. (Agent for Atlantic Casualty)

5. Atlantic Casualty Insurance Company (Appellee)

6. Blanco-Hidalgo Holding, LLC (Appellant)

7. Blanco, Robert (Appellant referred to as "Blanco-Hidalgo Holding, LLC)

C-1

BLANCO HIDALGO HOLDING, LLC,

v.

ATLANTIC CASUALTY
INSURANCE COMPANY,

CASE NO.: 14-14083

---

8. Feltman, Paul Brown (Attorney for the Appellant)

9. Leon, Alexander G. (Attorney for the Appellant)

10. Lopez, Fanny Azucena (Defendant/ co-personal representative of the Estate of Jorge Romero)

11. Moses, Robert D. (Attorney for Appellee)

12. Roller, Brian K. (Attorney for Alvarez/Lopez- co-representatives of the Estate of Jorge Romero)

13. Romero, Jorge (Defendant)

14. Schwartz Roller, LLP (Attorneys for Alvarez/Lopez- co-representatives of the Estate of Jorge Romero)

15. Wiederhold & Moses, P.A. (Attorneys for Appellee)

/s/ Paul B. Feltman
Paul B. Feltman (FBN 992046)
pfeltman@ACFDLaw.com
Benjamin R. Alvarez (FBN 175633)
Ben@acfdlaw.com

C-2

## STATEMENT REGARDING ORAL ARGUMENT

Oral Argument is desired in the above-styled Appeal. Oral argument will assist the Court in determining the merits of this case. Oral Argument will enhance consideration of the issues dealing with whether the Lower Court has committed reversible error and whether this case should be remanded to the Lower Court for further consideration.

## <u>CERTIFICATE OF TYPE SIZE AND STYLE</u>

The font used in Appellant's brief is proportionally-spaced Times New Roman, 14-point pursuant to the Federal Rules of Appellate Procedure.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT……………………………………………..C-1

STATEMENT REGARDING ORAL ARGUMENT…………………………..….i

CERTIFICATE OF TYPE SIZE AND STYLE…………………………….….ii

TABLE OF CITATIONS TO LEGAL AUTHORITIES……………………....iii

STATEMENT OF JURISDICTION…………………………………………1

STATEMENT OF ISSUES PRESENTED FOR APPEAL………………………1

STATEMENT OF CASE……………………………………………………2

STATEMENT OF THE FACTS……………………………………………....3

SCOPE OF REVIEW……………………………………………………8

SUMMARY OF THE ARGUMENT………………………………………9

ARGUMENT………………………………………………………....12

I.     THE POLICY EXCLUSION IS AMBIGUOUS AND DOES NOT
       APPLY……………………………………………………………12

A. The Policy Exclusion Is Ambiguous…………………………………12
B. The Policy Exclusion Does Not Apply…………………………………...15

II.    Roof Cleaning Services Were Not Provided………………………18

III.   DECENT WAS ACTING OUTSIDE OF THE SCOPE OF
       AUTHORITY AND WAS A FROLIC……………………………19

1

IV.    CONCLUSION………………………………………………………21

CERTIFICATE OF COMPLIANCE…………………………………….......22

CERTIFICATE OF SERVICE……………………………………………23

## TABLE OF CITATIONS TO LEGAL AUTHORITIES

<u>Case</u>                                                                                                      <u>Page</u>

*Anderson v. City of Bessemer City,*
470 U.S. 564 105 S. Ct. 1504, 84 L.Ed.2d 518 (1985)……………………………………..9

*Atlantic Casualty Insurance Co. v. Paszko Masonry, Inc.,*
718 F. 3d 721 (7th Cir. 2013)……………………………………………………….14

*Auto-Owners Ins. Co. v. Anderson,*
756 So. 2d 29 (Fla. 2000)……………………………………………………13

*Chandler v. Geico Indem. Co.,*
78 So. 3d 1293 (Fla. 2011)…………………………………………………...9,12

*Eberhardy v. Gen. Motors Corp.,*
404 F. Supp. 826 (M.D. Fla. 1975)……………………………………………...19

*Fayad v. Clarendon Nat. Ins. Co.,*
899 So. 2d 1082 (Fla. 2005)……………………………………………………13

*Herrera v. C.A. Seguros Catatumbo,*
844 So. 2d 664 (Fla. 3d DCA 2003)……………………………………………12

*Morrissette–Brown v. Mobile Infirmary Med. Ctr.,*
506 F.3d 1317 (11th Cir.2007)……………………………………………………...9

*Purrelli v. State Farm Fire & Cas. Ins. Co.,*
698 So. 2d 618 (Fla. 2d DCA 1997)……………………………………………...9

*Renteria–Marin v. Ag–Mart Produce, Inc.,*
537 F.3d 1321 (11th Cir.2008)……………………………………………………9

*State Farm Fire & Cas. Ins. Co. v. Deni Assoc. of Fla., Inc.,*
678 So. 2d 397 (Fla. 4th DCA 1996)……………………………………………13

*Sunshine Sec. & Detective Agency v. Wells Fargo Armored Services Corp.,*
496 So. 2d 246 (Fla. 3d DCA 1986)……………………………………………21

*U.S. Concrete Pipe Co. v. Bould,*
437 So. 2d 1061 (Fla. 1983)……………………………………………...12

*Westmoreland v. Lumbermens Mut. Cas. Co.,*
704 So. 2d 176 (Fla. 4th DCA 1997)………………………………………13

**STATUTES**
28 U.S.C §§ 1332, 2201-02………………………………………………...1

**LOCAL RULES**
Local Rule 32-4……………………………………………………………...21

## STATEMENT OF JURISDICTION

The parties to this appeal have briefed the issue of jurisdiction for this Court. [Court Docket 10/21/14 Response to Jurisdictional Question]. However, a brief synopsis of this Court's jurisdiction will be set forth. Appellee, ATLANTIC CASUALTY INSURANCE CO. ("Atlantic") filed the action below seeking declaratory relief and a finding that it was not obligated to indemnify its insured Appellant, BLANCO-HIDALGO HOLDINGS, LLC's ("Blanco-Hidalgo") pursuant to a policy exclusion. [D.E. 75; 107-8]. The district court's jurisdiction was based on 28 U.S.C §§ 1332, 2201-02. *Id.* Complete diversity exists and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. *Id.* This appeal arises out of the final order of the district court contained in its Findings of Fact and Conclusions of Law entered on August 18, 2014 wherein the district court found that Atlantic has no duty to defend its insured Blanco-Hidalgo in a pending state court action.

## STATEMENT OF ISSUES PRESENTED FOR APPEAL

Whether Cortes was a contractor and Decedent a sub-contractor under the Policy's exclusion at issue in this matter?

Whether Cortes or Decedent provided services under the terms of the Policy's exclusion at issue in this matter?

Whether Decedent provided services even if Cortes was not a contractor and Decedent was not a sub-contractor?

Whether Decedent was acting outside the scope of his authority when the accident

at issue in this matter occurred thereby removing him from the terms of the Policy's exclusion?[1]

## STATEMENT OF CASE

Atlantic filed its Amended Complaint for declaratory judgment on March 12, 2014. *See* [D.E. 75]. Atlantic alleged that the Estate of Jorge Romero initiated a lawsuit for wrongful death against Blanco-Hidalgo, among other defendants, in the Eleventh Judicial Circuit Court in and for Miami-Dade County ("the Romero Lawsuit"). *See* [D.E. 75 at ¶ 11].[2] Atlantic brought this declaratory action, seeking a declaration that it has no duty to indemnify or defend Blanco-Hidalgo against the Romero Lawsuit. *See* [D.E. 75].

On May 5, 2014, the lower court conducted a one (1) day trial in this matter. [D.E. 105]. By order dated August 18, 2014, the lower court entered judgment against Blanco-Hidalgo declaring the claim in the Romero Lawsuit was excluded from coverage under the Atlantic Policy and that Atlantic had no duty to defend its insured, Blanco-Hidalgo. [D.E. 108]. The district court found that Cortes was Blanco-Hidalgo's contractor performing services and as a result the Decedent was Blanco-Hidalgo's sub-contractor providing services on Blanco-Hidalgo's Property thereby excluding coverage under the asserted Policy exclusion. *See* [D.E. 108].

---

[1]   The first two issues will be discussed together in Section I B, *infra*. The third and fourth issues will be discussed in Sections II and III *infra*, respectively.

[2]   Jorge Romero will be referred to as the "Decedent".

2

## STATEMENT OF THE FACTS

On or about October 2011, Blanco-Hidalgo contacted Luis Cortes ("Cortes") and asked Cortes to inspect the roof of Blanco-Hidalgo's property, located at 221-235 W 28th Street, Hialeah, Florida 33012 (the "BH Property") to prepare a proposal for roof repairs (the "November Proposal"). *See* [D.E 106 at 124, Trial Transcript]. Soon thereafter, Cortes inspected the BH Property. *Id*. at 124-126. Subsequent to this inspection, L. Cortes Construction, Inc.[3] delivered to Blanco-Hidalgo the November Proposal. *Id*. at 74-75. The proposal would expire fifteen (15) days later. *Id*. at 75-76. The roof repairs would require a permit; however, Cortes could not obtain a permit on its own and was required to have the work done by another construction company, Wadra, LLC. [D.E.-57-1 pp. 16-17; 36; 40-41]. Therefore, the November Proposal listed Wadra, LLC as the state certified general contractor due to Cortes' inability to obtain the necessary permit for the work to be performed. *Id*. and [D.E. 107 at Exhibit 10 November Proposal]. The course of business between Blanco-Hidalgo and Cortes was an agreement between the parties on the scope of work prior to work commencing and payment would be made after work was completed. [D.E.-106 at 41]. But, because of the size of this job and the need for a permit and general contractor, prior to commencing any

---

[3] L. Cortes Construction, Inc. is a Florida Corporation owned and operated by Cortes. Both L. Cortes Construction, Inc. and Cortes will be referred collectively as "Cortes".

work Cortes was required to provide and Blanco-Hidalgo was required to sign the November Proposal to allow Cortes to obtain a permit for the potential roof repairs. *Id*. at 75. Blanco-Hidalgo never signed the November Proposal. *Id*. at 75. Blanco-Hidalgo and Cortes never finalized the agreement with regard to the November Proposal and it expired in early December 2011, prior to any roofing work on the BH Property. *Id*. at 75-76.

Several months later, with no further contact between Blanco-Hidalgo and Cortes, on or about March 20, 2012, Blanco-Hidalgo contacted Cortes again and asked Cortes to revisit Blanco-Hidalgo's property to present a new estimate. [D.E. 106 at 76]. Blanco-Hidalgo's sole request of Cortes in March of 2012 was to inspect the BH Property to see if the roofing repairs could be done and to provide an estimate. [D.E. 106 at 90, 92, 110]; [D.E. 57-1 pp. 18-20; 31; 39-41].   No agreement could be reached between Blanco-Hidalgo and Cortes until an inspection was performed and a new revised estimate/proposal drafted, delivered, and executed between the parties. [D.E. 106 at 113].   Cortes could not and did not attempt to rely on the November Proposal as too much time had passed to rely upon it. *Id*. at 20.   It also required Cortes to hire another company similar to Wadra LLC, the contractor used on the November Proposal, as a permit would still be necessary to do the work and Cortes could not pull a permit. [D.E 106 at 113];

4

[D.E.-57-1 pp. 36; 38-39]. Cortes could not hire Wadra LLC, however, because it was no longer in business. [D.E. 106 at 90].

On or about March 21, 2012, Cortes sent Victor Ramirez ("Ramirez") to the BH Property to inspect for the potential job and provide the details to Cortes to generate an estimate/proposal. [D.E. 106 at 77-78]; [D.E. 57-1 at 18-19; 39-40]. Cortes specifically instructed Ramirez to only inspect the eight (8) warehouses that encompassed the BH Property in need of repair. *Id*. at 79, 114.[4] Cortes never hired Ramirez to perform any roofing work nor to clean any materials off the roof of the BH Property. *Id*. at 78, 93-95, 114. Cortes never communicated with the Decedent, nor hired him to perform any roofing work. *Id*.

On March 21, 2012, Ramirez and the Decedent arrived at the BH Property. [D.E. 106 at 51]. When Ramirez arrived at the BH Property, he communicated to Cortes that there was no ladder to get onto the roof of the BH Property. *Id*. at 61-62. At that time, Cortes instructed both Ramirez and the Decedent to leave the BH Property, thereby ending any potential authority to act on behalf of Cortes. [D.E. 106 at 61-62, 66, 84, 86, 95, 114]; [D.E. 57-1 at 24-25; 42].

Despite Cortes' instructions, Ramirez accompanied by the Decedent remained near the BH Property. [D.E. 106 at 60]. Ramirez and the Decedent left the BH Property and walked several hundred feet to 267 W 28th Street, Hialeah,

---

[4]   Blanco-Holdings owns a total of 15 of 22 units at the Blanco Holdings Property. Only 8 of those units were in need of roof repair. [D.E. 106 at 123].

Florida 33012 (the "267 Property"). *Id*. at 62, 66. Ramirez and the Decedent found a wooden ladder that was used to gain access to a stationary ladder attached to the building several hundred feet away from the BH Property. *Id*. at 39, 51, 84-85; [D.E. 107-2 Exhibit "2" showing wooden ladder propped against stationary ladder within locked chain linked fence]. The stationary ladder was enclosed by a locked chain link fence also attached to the 267 Property. *Id*. Decedent hopped the fence, obtained access to the stationary ladder and ascended to the roof. [D.E. 106 at 66]. The Decedent inadvertently contacted an exposed electrical wire at the 267 Property and perished. *Id*. at 19. Blanco-Hidalgo does not own the 267 Property where the accident occurred. *Id*. at 120-21; 148. Rather, the 267 Property is owned by 267 Corporation that is not related in any way to Blanco-Hidalgo. *Id*. at 123. Mr. Blanco testified that he never asked for removal of garbage or trash from the roof and there was none. *Id*. at 127-28; 145. That is because the only thing on the roof was an old cooling system on the opposite side of the building from the Blanco-Hidalgo Property where the eight (8) units in need of repair were located. *Id*. There was no testimony that there was garbage on the roof. Mr. Blanco also testified that a permit was never pulled for any roof work. *Id*. at 149.

On or about June 4 2011, Atlantic issued to Blanco-Hidalgo a liability insurance policy, which contained coverage for "bodily injury" caused by an "occurrence" ("the Atlantic Policy"). *See* [D.E. 75-2; 107-1].

6

The Atlantic Policy provides in pertinent part:

## EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS

Exclusion e. Employer's Liability of Coverage

A.     Bodily Injury and Property Damage Liability (Section 1 – Coverages) is replaced by the following:

This insurance does not apply to:

(i) "bodily injury" to any "employee" of any insured arising out of or in the course of:

(a) Employment by any insured; or

(b) Performing duties related to the conduct of any insured's business;

(ii) "bodily injury" to any "contractor" arising out of or in the course of the rendering or performing services of any kind or nature whatsoever by such "contractor" for which any insured may become liable in any capacity; or

(iii) "bodily injury" sustained by the spouse, child, parent, brother or sister of any "employee" of any insured, or of a "contractor", as a consequence of any injury to any person as set forth in paragraphs (i) and (ii) of this endorsement.

This exclusion applies to all claims and "suits" by any person or organization for damages because of "bodily injury" to which this exclusion applies including damages for care and loss of services.

This exclusion applies to any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury" to which this exclusion applies, including any obligation assumed by an insured under any contract.

With respect to this endorsement only, the definition of "Employee" in the DEFINITIONS (Section V) of CG0001 is replaced by the following:

"Employee" shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering or the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.

7

As used in this endorsement, "contractor" shall include but is not limited to any independent contractor or subcontractor of any insured, any general contractor, any developer, any property owner, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, any independent contractor or subcontractor of any property owner, and any and all persons working for and or providing services and or materials of any kind for these persons or entities mentioned herein.

[D.E. 107 Exhibit "1" at 3 of 9 EXCLUSIONS OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS].

As alleged in Atlantic's Complaint, Atlantic sought a declaration that the Decedent was Blanco-Hidalgo's "employee" and/or "contractor", thereby excluding the Decedent from coverage. *See* [D.E. 75]. After a one day trial on May 5, 2014 [D.E. 105] the district court issued its Findings of Fact and Conclusions of Law [the final order on appeal] and found that Cortes was a contractor of Blanco-Hidalgo providing services and as a result the Decedent was sub-contractor of Blanco-Hidalgo providing services. [D.E. 108, Findings of Fact and Conclusions of Law]. Therefore, the district court found there was no coverage for Blanco-Hidalgo under the Policy.

This appeal follows by notice dated September 10, 2014. [D.E. 112].

## **SCOPE OF REVIEW**

This Court reviews the district court's interpretation of the policy exclusion at issue *de novo*. It is well settled that the drafter of a contract, or policy in this case, is in the best position to include such details as it desires, and thus any

8

omissions or ambiguities shall be held against it. *Purrelli v. State Farm Fire & Cas. Ins. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997) (holding that "policy provisions excluding or limiting the insurer's liability are construed more strictly than coverage provisions); s*ee also Chandler v. Geico Indem. Co.*, 78 So. 3d 1293, 1299 (Fla. 2011).

After a bench trial, the district court's conclusions of law are reviewed *de novo* and the district court's factual findings are reviewed for clear error. *Renteria–Marin v. Ag–Mart Produce, Inc.,* 537 F.3d 1321, 1324 (11th Cir. 2008). "A factual finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Morrissette–Brown v. Mobile Infirmary Med. Ctr.,* 506 F.3d 1317, 1319 (11th Cir. 2007) (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L.Ed.2d 518, (1985)).

## SUMMARY OF THE ARGUMENT

The definition of "contractors" argued by Atlantic and accepted by the district court would make it implausible that anyone would want such a policy. That is a reason to doubt such an interpretation. If the exclusion is as broad as Atlantic argues and the district court found, not only is it doubtful anyone would buy it, it would render the Policy illusory. It could exclude coverage for a passerby, deliveryman, building inspector, police officer, garbage collector, etc.

9

The Seventh United States Court of Appeals' Opinion construing this same exclusion in Atlantic's Policy found that services are not provided until a contractor begins to do compensated work on the project. That did not occur in this matter.

Cortes was attempting to obtain the roof repair job, but needed to provide an estimate/proposal. Therefore, Cortes was not a contractor providing services because it was not doing compensated work on the roof. The prior November Proposal reveals what needed to occur before the roof work could begin in March 2012. Cortes needed to: 1) inspect the property; 2) find a general contractor to perform the work because Wadra LLC was no longer in business; 3) agree on a price with the general contractor; 4) obtain the necessary permits; 5) put the estimate/proposal in writing; and 6) present it to Blanco-Hidalgo for acceptance. This had to occur and was in-fact what occurred in the events leading up to the November Proposal. To the extent the Decedent was on the property it was for the purpose of obtaining the contract.

The district court found that even if Cortes was not a contractor under the exclusion that the Decedent had provided a "service" by providing a cleaner roof. However, services are not provided until the contractor begins compensated work on the project and that did not and could not occur until the steps set forth above had taken place.

10

Further, the Decedent was not separately providing the service of cleaning the roof for Blanco-Hidalgo as found by the district court.   There was no garbage on the roof of Blanco-Hidalgo's eight (8) units.  Decedent was on the roof away from Blanco-Hidalgo's units apparently dismantling an old cooling system that had no connection to the eight (8) units on the Blanco-Hidalgo Property or the roof covering them.  He was there after Cortes instructed him and Ramirez to leave the BH Property.  Instead, they found a ladder, jumped over a locked enclosed fence, propped the ladder up on a stationary ladder attached to the building and climbed on the roof at the 267 Property where the accident occurred.  Blanco-Hidalgo did not own the 267 Property.  Because Decedent was not providing any services at the time of the accident he does not fall under the Policy exclusion at issue.

Although not ruled on by the district court, Blanco-Hidalgo did argue that if Decedent and Mr. Ramirez were considered employees of Cortes, then they were acting outside of the scope of their employment when the accident occurred.  Even if Cortes was a contractor providing services and Decedent was a sub-contractor he was on a frolic of his own when he found the ladder, jumped a locked fenced, placed it upon a separate stationary ladder to climb on the roof at the 267 Property and began to dismantle an old cooling unit that was on a different part of the building several hundred feet from where Blanco-Hidalgo's units are located.  The Decedent's frolic occurred after being told to leave by Cortes when they could not

11

find a ladder. Therefore, Decedent does not fall within the exclusionary language at issue in this matter.

## ARGUMENT

## I.   THE POLICY EXCLUSION IS AMBIGUOUS AND DOES NOT APPLY

### A.   The Policy Exclusion Is Ambiguous

As the drafting party, an insurance company is in the best position to construct the insurance policy contract as it sees fit. *Chandler v. Geico Indem. Co.*, 78 So. 3d 1293, 1299 (Fla. 2011).   When language in an insurance policy is ambiguous, a court should resolve the ambiguity in favor of the insured by adopting the reasonable interpretation of the policy's language that provides coverage, rather than the reasonable interpretation that would act to limit coverage. *See Id.* at 785-86.   Moreover, the insurer has the burden of proving the applicability of any exclusion to coverage under a policy. *U.S. Concrete Pipe Co. v. Bould,* 437 So. 2d 1061, 1065 (Fla. 1983); *Herrera v. C.A. Seguros Catatumbo,* 844 So. 2d 664, 668 (Fla. 3d DCA 2003). Exclusionary clauses are disfavored and are "always strictly construed" in favor of the broadest coverage. *Westmoreland v. Lumbermens Mut. Cas. Co.,* 704 So. 2d 176, 179–80 (Fla. 4th DCA 1997) (citing *State Farm Fire & Cas. Ins. Co. v. Deni Assoc. of Fla., Inc.,* 678 So. 2d 397 (Fla. 4th DCA 1996) (ruling that if an exclusion is not stated with sufficient clarity, then the rule of strict construction requires a construction in favor of the insured)).   In

12

fact, exclusionary clauses are specifically construed even more strictly against the insurer than coverage clauses. *Auto-Owners Ins. Co. v. Anderson,* 756 So. 2d 29, 34 (Fla. 2000). The insurance company is held responsible for clearly setting forth what damages are excluded from coverage under the terms of the policy. *Fayad v. Clarendon Nat. Ins. Co.,* 899 So. 2d 1082, 1086 (Fla. 2005). Blanco-Hidalgo now asserts that the ambiguities of the Policy must be held against Atlantic, and the Court must find the exclusion inapplicable in the instant case.

The two terms that Atlantic attempts to define in the relevant exclusion are "employee" and "contractor." In the instant case, the language of the Policy is ambiguous in its attempt to define those two terms. The definitions offered are unclear and purposefully confusing. According to Black's Law Dictionary, "employee" is defined as, "A person who works in the service of another (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." *See Black's Law Dictionary* 265 (4th Pocket Ed. 2011). "Contractor" is defined as, "1. A party to a contract. 2. More specifically, one who contracts to do work or provide supplies for another." *See Id.* at 162. Read as is, the exclusions in Atlantic's policy could apply to an unreasonably broad range of individuals. This overbroad interpretation given by Atlantic and the district court essentially renders the policy illusory and provides no coverage. Atlantic had the opportunity to draft plain language and

13

chose not to.  These ambiguities must be resolved in favor of coverage.  There is

no dispute that the language is unclear and ambiguous, and that Blanco-Hidalgo is

entitled to a finding of coverage as to the exclusion.

In *Atlantic Casualty Insurance Co. v. Paszko Masonry, Inc.*, 718 F. 3d 721

(7th Cir. 2013), the Seventh Circuit held the very same exclusionary clause to be

ambiguous.   The *Paszko* Court, therefore, resolved the ambiguity against the

drafter on virtually identical facts. The drafter in *Paszko* is the same Plaintiff

insurer in the instant case. In *Paszko*, an employee of a company that performs

waterproofing services was struck by a beam at a construction site.  *Id*. at 722.  The

subject employee was at the site providing a demonstration of caulking materials in

an effort to secure a construction sub-contract from the general construction

contractor on site.   *Id*.   The contract had not been signed when the caulking

services were being provided, but was subsequently entered into.  *Id.*

In the analysis of whether the very same exclusionary clause applied to the

tort action in that case, Justice Posner found:

> The exclusion is poorly drafted. The term "contractor" is exemplified
> rather than clearly defined. The wording of the exclusion leaves
> uncertain whether Raincoat was a contractor simply because
> companies that engage in construction are called "contractors," or
> whether it did not become a "contractor" until it signed a contract with
> Prince or until it provided materials or services other than the
> demonstration of caulking, or whether the demonstration itself was a
> service provided by a contractor.

*Id*. at 723.  The Court in *Paszko* analogized the demonstrating employee to an actor

14

auditioning for a part because, similar to an auditioning actor, the waterproofing construction company (the employer) was not a "contractor" until it "begins compensated work on the project." *Id.* at 725-26.   As a result, the injured individual was held not to be a "contractor" under Atlantic's Policy until compensated work had begun on the roof. *Id.*[5] The district court's construction of the Policy exclusion at issue is incorrect as it is ambiguous and properly construed against Atlantic.

## B.    The Policy Exclusion Does Not Apply[6]

**Contractor and Sub-Contractor**

Likewise, in this matter, Cortes was attempting to obtain the contract.  The district court did not address the fact that there were very distinct steps taken before the prior November Proposal that would have to be taken again before the roof work could begin.  Cortes had to: 1) inspect the property; 2) find a general contractor to perform the work because Wadra LLC was no longer in business; 3) agree on a price with the general contractor; 4) obtain the necessary permits; 5) put the estimate/proposal in writing; and 6) present it to Blanco-Hidalgo for acceptance.  This had to occur and was in-fact what occurred in the events leading

---

[5]   If the exclusion is as broad as Atlantic and the district court read it then it would exclude coverage for a deliveryman, building inspector, police officer and garbage collector. *Paszko*, 718 F.3d at 724.

[6]   The issue of definition of "contractor" and "services provided" will both be addressed in this Section.

up to the November Proposal. To the extent the Decedent was doing any work on the property it was for the purpose of obtaining the contract and not done as part of the as yet agreed to contract.

Given the course of conduct between the parties in reaching the November Proposal there is no way that Cortes could have started the work on the roof on March 21, 2012 the day after speaking with Mr. Blanco as found by the district court. [D.E. 104 at 4 § 8]. To the extent any work was being done it could only be considered as part of the audition to obtain the roofing contract. *Paszko*, 718 F. 3d at 723. Under the Policy's exclusion, Cortes could only be a contractor if it was doing compensated work on the BH Property. *Id.* at 725-26. But, Cortes could not do compensated work until it undertook all of the same steps done to produce the November Proposal. Because Cortes was not a contractor, then the Decedent could not be Cortes' sub-contractor. The district court's ruling ignores the course of conduct between Blanco-Hidalgo and Cortes and it findings are clear error.

**Providing Services**

The district court's finding that even if Cortes was auditioning and not a contractor under the exclusion that the Decedent had provided a "service" to Blanco-Hidalgo by providing a "cleaner roof" also ignores the *Paszko* decision and the proper reading of the exclusion's "providing services" term. [D.E. 108 at 11 n. 7]. In *Paszko*, the injured party was demonstrating the caulking used to seal the

16

joints and gaps in windows on the property.    718 F.3d at 722.    However, the general contractor had to satisfy itself in advance that the color, material and the caulker were competent to do the job.    *Id*.    It allowed the sub-contractor to caulk a few windows.    *Id*.    After the caulking demonstration, but before the injured party left the property, he was hit by a falling support beam.    *Id*.    The contract was signed a half hour or so after the accident.    *Id*.    The Court of Appeals found that the demonstration caulking could be thought of as the provision of a "service" in the same way the alleged cleaning of the roof in this matter could be considered a service.    That is because the caulking would remain in the windows and in *Paszko*, unlike this matter, led to the signing of the contract.    *Id*. at 725-26.    However, the Court of Appeals rejected that interpretation and found that services are not provided until the contractor "begins to do compensated work on the project."    *Id*.

Similarly, in this matter, Cortes could not begin to do "compensated work" until Cortes inspected the property, found a general contractor to perform the work and obtain the necessary permits, agreed on a price with the general contractor, put the estimate/proposal in writing and presented it to Blanco-Hidalgo for acceptance. This had to occur and was in-fact what occurred in the events leading up to the November Proposal.    To the extent the Decedent was on the property it was for the purpose of Cortes obtaining the contract and not done as part of compensated roof

17

work. *Paszko*, 718 F. 3d at 725-26.[7]  Therefore, the exclusion does not apply.

## II.  Roof Cleaning Services Were Not Provided

Decedent did not provide services to Blanco-Hidalgo at the time of the accident at the 267 Property as found by the district court and the district court's finding is clear error.  The district court found that even if Cortes was not a contractor and was vying for the contract, Decedent and Ramirez would have still provided a service by cleaning the roof, thus triggering the exclusionary clause. [D.E. 108 at 11 n. 7].  However, that proposition is belied by the facts.  Cortes told Ramirez and Decedent to leave the BH Property when they arrived without and could not subsequently find a ladder.  When Decedent found a ladder it was not tall enough to reach the roof, so he hopped over a locked fence, leaned it against a stationary ladder leading to the roof located on the 267 Property and ascended to the roof.  [D.E. 107 at Exhibit "2" picture showing placement of ladder].  Once on the roof at the 267 Property, Decedent did not travel 180 feet over to the roof above Blanco-Hidalgo's eight (8) units in need of repair to clean it, or for any purpose.  [D.E. 106 at 127-28].  Rather, he decided to dismantle an old cooling system on the roof not owned by Blanco-Hidalgo on the other side of the property. *Id.*  There was no proof that there was anything on the roof other than the old cooling system and no proof that there was "garbage" as found by the district

---

[7]    It follows that because Cortes was not a "contractor" Decedent was not a "subcontractor" as found by the district court. [D.E. 108 at 9-10].

court. *Id.* He was on the roof after being told to leave and was doing something he was not asked by Cortes to do *i.e.* remove an old air cooling system that was located 180 feet away from the BH Property. Neither Decedent, nor Ramirez, provided any services to Blanco-Hidalgo or on the BH Property's roof because they never got closer than 180 feet to it. *Id.* The district court's finding that Decedent was providing a service is clear error.

## III. DECEDENT WAS ACTING OUTSIDE OF THE SCOPE OF AUTHORITY AND WAS ON A FROLIC

Blanco-Hidalgo argued that Decedent was acting outside the scope of his authority. [D.E. 64]. Decedent was acting outside the scope of his duty to clean the roof for the same reasons that the Decedent did not provide any services. The district court did not rule on the argument. However, accepting arguendo the district court's finding that Decedent was a sub-contractor sent to provide the service of cleaning the roof he was well outside the scope of that agency when he died.

"An employer will be liable for the acts of his employees so long as their acts are within the course of employment. . . Marked departures from the employment duties, however, will constitute an abandonment that forecloses any liability on the part of an employer." *Eberhardy v. Gen. Motors Corp.*, 404 F. Supp. 826, 830 (M.D. Fla. 1975). The Restatement defines "scope of employment" as follows:

19

(1) **Conduct of a servant is within the scope of employment** if, but only if:
(a) it is of the kind he is employed to perform;
(b) it occurs substantially within the authorized time and space limits;
(c) **it is actuated, at least in part, by a purpose to serve the master**, and
(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
(2) **Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.**

Restatement (Second) of Agency § 228 (1958). (emphasis added).

In the instant case, any alleged employment relationship terminated the moment Cortes instructed Ramirez and Decedent to leave the job site. Blanco-Hidalgo verbally requested Cortes to inspect the BH Property's eight (8) units for a potential future contract for a roof rehab. Cortes sent Ramirez to the BH Property. Decedent accompanied Ramirez. When Ramirez arrived at the BH Property he notified Cortes that there was no ladder and, therefore, Ramirez had no way of getting onto the roof of the Blanco-Hidalgo Property to inspect the roof on the eight (8) units. Cortes then instructed Ramirez to leave the BH Property, thereby ending Ramirez' and Decedent's authority to act on behalf of Cortes. Subsequent to this instruction, and without Cortes' knowledge, Decedent and Ramirez found a ladder. Decedent jumped a locked fence, propped the ladder against a stationary ladder affixed to the building and ascended the ladder at the 267 Property, which

20

was **not** the property subject to inspection, or owned by Blanco-Hidalgo. Decedent then began to remove an old cooling system on the roof far removed from the roof over Blanco-Hidalgo's eight (8) units.   Romero's actions were a frolic from the original scope of alleged work, thereby relieving Cortes, and by consequence Blanco-Hidalgo, of any vicarious liability. *See Sunshine Sec. & Detective Agency v. Wells Fargo Armored Services Corp.*, 496 So. 2d 246 (Fla. 3d DCA 1986).   As such, Blanco-Hidalgo cannot be held liable for Decedent's actions outside the scope of employment.   Accordingly, Decedent was clearly outside the scope of any potential authority, and thus does not fall within the exclusion as a matter of law.

## IV.   CONCLUSION

For the foregoing reasons, Blanco-Hidalgo respectfully requests the entry of this Court's Opinion reversing the district court and finding that Atlantic has a duty to defend and indemnify Blanco-Hidalgo in the state court action.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the number of words in this brief pursuant to Local Rule 32-4 totals 5,293.

Respectfully submitted,

By:/s/ *Paul B. Feltman*
PAUL B. FELTMAN
ALVAREZ, CARBONELL,
FELTMAN & DA SILVA, P.L.

21

Fla. Bar. No.: 992046
75 Valencia Avenue
8th Floor
Coral Gables, FL 33134
Phone: (305) 444-5885
Fax: (305) 444-8986

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 25, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Paul B. Feltman
PAUL B. FELTMAN, ESQ.
Florida Bar No.: 992046

## SERVICE LIST

K. BRIAN ROLLER
**SCHWARTZ ROLLER LLP**
Florida Bar No. 0018696
3876 Sheridan Street
Hollywood, Florida 33021
broller@szalaw.com
pleadings@szalaw.com
Telephone :( 954) 966-2483
Facsimile :( 954) 966-2566

22

Robert D. Moses, Esq.
Florida Bar No. 182860
*Attorney for Plaintiff*
Wiederhold, Moses,
Kummerlen & Waronicki, P.A.
Brandywine Centre II, Suite 240
560 Village Blvd.
West Palm Beach, FL 33409
Telephone: 561-615-6775
Facsimile: 561-615-7225
rmoses@wmrfla.com